UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

ANTHONY ALEXANDER, et al.,       )
                                 )
             Plaintiffs,          )
                                 )
      v.                         )        No. 4:23-cv-00085-SEB-KMB
                                 )
CVS PHARMACY, INC., A RHODE       )
ISLAND CORPORATION,               )
                                 )
             Defendant.           )

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Now before the Court is the Motion to Dismiss [Dkt. 16] filed by Defendant CVS

Pharmacy, Inc. ("CVS") challenging the legal sufficiency of the Complaint brought by

Plaintiffs Anthony Alexander, M.D. and the Pain Medicine and Rehabilitation Center.

For the reasons detailed below, the Motion to Dismiss must be <u>GRANTED</u>.[1]

**<u>Factual Background</u>**

Anthony Alexander, M.D., is a board-certified anesthesiologist licensed in Indiana

and Illinois.  In addition to his medical licenses, he also maintains valid DEA and Indiana

controlled substance registrations.  Dr. Alexander owns and operates the Pain Medicine

& Rehabilitation Center (the "Center"), an Indiana professional corporation with offices

in Seymour and Jeffersonville, Indiana, which offices were opened in 2001 and 2009,

respectively.  A majority of the patients Dr. Alexander treats suffer from chronic

---

[1] On December 12, 2023, Defendant filed a Motion for Leave to File Notice of Supplemental
Authority [Dkt. 27].  That motion is hereby <u>GRANTED</u>.

intractable pain, cancer, or terminal illness.  Based on this patient population, prescribing controlled substances to manage pain is a pivotal component of Dr. Alexander's practice and treatment of his patients.  In addition to running his practice, Dr. Alexander also maintains an active role in developing and supporting legislation aimed at aiding pain patients, including the Indiana Pain Management Prescribing Final Rule, adopted by the Indiana Medical Licensing Board in September 2014.

In December 2014, the Indiana Attorney General investigated Dr. Alexander and the Center for alleged improper medical billing and controlled substance prescribing practices.  As part of the investigation, a search warrant was executed at Dr. Alexander's offices, staff members were interviewed, and a review of medical and business records was conducted.  Plaintiffs allege that this investigation was prompted by the Indiana Board of Pharmacy after it received "data" from CVS that CVS claimed called into question Dr. Alexander's prescribing patterns.  Plaintiffs allege that the "data" was generated by risk management software CVS utilizes to monitor the prescribing patterns of physicians based on unknown parameters, which do not include patient-by-patient evaluation of medical necessity by a licensed pharmacist, as is required by federal and state regulation.  According to Plaintiffs, CVS used its risk management software to support its decision to ban its pharmacies in all 50 states from filling Dr. Alexander's prescriptions beginning in February 2015 and continuing through the present.

While the Indiana Attorney General's investigation remained open, Dr. Alexander on several occasions attempted to discuss the issue with CVS, to no avail.  On May 4, 2016, Dr. Alexander was informed by CVS that because it had purchased Target

2

Pharmacies, those pharmacies would no longer be filling his prescriptions.  On May 9, 2016, Dr. Alexander again attempted to resolve the issue.  In response, CVS provided Dr. Alexander a survey/questionnaire regarding his prescribing practices to complete and return.  Although Dr. Alexander completed the form and returned it to CVS, the ban was not lifted.

On December 30, 2019, the Indiana Attorney General's office issued a letter to Dr. Alexander advising him that the investigation was being closed.  No charges, arrests, civil infractions, or any other findings of wrongdoing resulted from the investigation.  In January 2020, Dr. Alexander provided a copy of the Attorney General's letter to CVS but received no response from the company.  In August 2022, Dr. Alexander again reached out to CVS regarding honoring his prescriptions.  In September 2022, he received a letter and survey in the mail from CVS, but when he called CVS and asked to speak with someone regarding the information he received, no manager or other CVS representative ever returned his call.  To date, despite having provided the requested information regarding Dr. Alexander's prescribing practices and being advised that the investigation into his billing and prescribing practices was closed without any action by the State of Indiana, CVS continues instructing its pharmacies not to fill Dr. Alexander's prescriptions.

In Dr. Alexander's 29 years of treating patients, no other pharmacy has refused to fill controlled substance prescriptions written by him.  However, due to CVS's large market share, its ban severely limits where Dr. Alexander's patients can fill their prescriptions, and as a result, he has either lost or had to turn away thousands of patients

because he is unable to properly manage their medical conditions.  Plaintiffs allege that, in 2021 and 2022, for example, as a result of CVS's ban, they have lost 275 to 300 patients and 25 to 30 referral partners in each of those years.  Since the ban was imposed in 2015, Plaintiffs have also lost millions of dollars in revenue.  While the Center's operations costs vary from year to year, from 2015 to the present, the annual cost of operations exceeds $1.1 million.  The Center had a net loss of over $300,000 in 2022 and expects an even more significant loss in 2023.  Plaintiffs allege that if CVS's ban on filling Dr. Alexander's prescriptions continues, he will be forced to close his practice.

Based on these facts, Plaintiffs allege a state law tortious interference with a business relationship claim as well as a claim for injunctive relief enjoining CVS from continuing to ban its pharmacies from filling Dr. Alexander's prescriptions.  Now before the Court is CVS's motion to dismiss, which is fully briefed and ripe for ruling.

## Legal Analysis

### I.   Motion to Dismiss Standard

In resolving a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all "well-pleaded factual allegations" in the Complaint and draws all ensuing inferences in favor of the non-movant.  *Lake v. Neal,* 585 F.3d 1059, 1060 (7th Cir. 2009). Regarding the legal sufficiency of the claims, the Court asks "whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court focuses on the well-pleaded facts, as opposed to conclusory statements or "threadbare recitals of the elements of a cause of action," in an effort to determine whether the factual averments "permit the court to infer

4

more than the mere possibility of misconduct." *Id.*  With these principles in mind, we examine below each of Dr. Leer's claims for relief to determine whether under the applicable Indiana legal principles/statutes it states a claim upon which relief can be granted.

## II.    Discussion

### A.  Count I – Tortious Interference With a Business Relationship

In Count I, Plaintiffs allege that the business relationships Dr. Alexander had established with his patients and his referral partners were intentionally interfered with by CVS when it refused to honor his prescriptions for controlled substances, thereby causing Plaintiffs economic injury and monetary damages.  CVS argues that this claim must be dismissed because it is barred by the applicable statute of limitations, and, even if not barred, fails to state a plausible claim for relief.  We address these arguments in turn below.

There is no dispute that, under Indiana law, claims for tortious interference with a business relationship are governed by a two-year statute of limitations.  IND. CODE § 34-11-2-4.  Here, Plaintiffs allege that CVS committed this tort when it made a corporate decision not to fill prescriptions Dr. Alexander writes for controlled substances, a decision of which Plaintiffs were apprised in 2015, approximately eight years before they filed their complaint.  Plaintiffs do not challenge any of these facts but argue that their tortious interference claim is nonetheless not time-barred because the continuing violation doctrine exception to the statute of limitations applies to save their claim.  Under this exception, "when an entire course of conduct combines to produce an injury,

the conduct may constitute a continuing wrong so as to delay the running of the statute of limitations" until the end of the continuing wrongful act. *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 644 (Ind. Ct. App. 1999).

However, as the Seventh Circuit held in rejecting a similar argument raised by Plaintiffs in a prior suit against their medical-billing software vendor, Indiana's continuing wrong doctrine does not toll the limitations period, "if the plaintiff obtains information that should lead to the discovery of the cause of action." *Pain Center of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 463 (7th Cir. 2018) (citing *Snyder v. Town of Yorktown*, 20 N.E.3d 545, 551 (Ind. Ct. App. 2014); *C & E Corp.*, 717 N.E.2d at 645). Here, when CVS informed Plaintiffs in 2015 that it would no longer fill prescriptions for controlled substances written by Dr. Alexander, they had actual knowledge of all the relevant facts forming the basis of their complaint. Plaintiffs have not identified any information they discovered in the intervening eight years that they needed in order to bring this lawsuit. Even assuming the relevant date when the limitations period began to run is tied to when CVS learned that the State of Indiana had closed its investigation into Dr. Alexander without taking any action against him, Plaintiffs informed CVS of that fact in January 2020, more than three years before this complaint was filed. Accordingly, Plaintiffs' tortious interference with a business relationship claim is time-barred and subject to dismissal for that reason.[2]

---

[2] Although "complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). It is appropriate to consider

Moreover, even if not time-barred, Plaintiffs' tortious interference claim must be dismissed for pleading deficiencies.  Under Indiana law, to prevail on a claim for tortious interference with business relationships, a plaintiff must prove: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship." *Gov't Payment Serv., Inc. v. Ace Bail Bonds*, 854 N.E.2d 1205, 1209 (Ind. Ct. App. 2006) (citations omitted).  Additionally, "this tort requires some independent illegal action." *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

To prove intentional interference, a plaintiff must be able to show that the defendant "specifically intended to interfere" or that, although the defendant did not "act for the purpose of interfering" with the relationship, it "knew that the interference was certain or substantially certain to occur" as a result of its action.  *Drake v. Dickey*, 2 N.E.3d 30, 39 (Ind. Ct. App. 2013).  An absence of justification "is established 'only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014) (quoting *Bilimoria Comp. Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind. Ct. App. 2005)).

---

the statute of limitations in this case because "the relevant dates are set forth unambiguously in the complaint" and "[i]t is also clear that the continuing tort rule does not apply …." *Id.*

Regarding the element of absence of justification, Plaintiffs allege that CVS will not fill Dr. Alexander's controlled substance prescriptions because of unfounded concerns about whether such prescriptions are proper.  Sec. Am. Compl. ¶¶ 24–26.  Even if, as Plaintiffs allege, such concerns are misguided, taking as true Plaintiffs' allegation that CVS acted because of its views on proper prescribing patterns, as we are required to do at this stage of the litigation, then CVS acted for a "legitimate" business purpose, not an "improper" one.  Accordingly, Plaintiffs have failed to adequately allege that CVS acted without justification in declining to fill Dr. Alexander's prescriptions for controlled substances.  *See Miller*, 11 N.E.3d at 961 ("The existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability.").

Additionally, Plaintiffs have failed to allege that CVS committed an independent illegal act.  Although Indiana law does not explicitly define "illegality" in this context, Plaintiffs have provided no argument whatsoever as to the illegality requirement.  Because Indiana law is clear that "illegal conduct is an essential element of tortious interference with a business relationship," *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000), Plaintiffs' tortious interference claim fails for this reason as well.

### B.  Count II – Injunctive Relief

In Count II, Plaintiffs allege a claim for injunctive relief.  However, as the Seventh Circuit has recognized, injunctive relief "is a remedy, not a cause of action, and thus should not be pleaded as a separate count."  *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019).  Because Plaintiffs' substantive claim for tortious interference

with a business relationship is dismissed for the reasons detailed above, Count II is likewise dismissed.

## III.  Conclusion

For the reasons detailed above, Defendant's Motion to Dismiss [Dkt. 16] is GRANTED with prejudice.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date:  _____1/8/2024_____          _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Guy S. DiMartino
Guy S. Dimartino, DC, JD, PA
eservice@gsdimartino.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Zachary Kumar
Foley & Lardner LLP
zkumar@foley.com